UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SPY DIALER, INC., | ) | Case No. ED CV 18-1178 FMO (SHKx) |
|             Plaintiff, | ) | |
|     v. | ) | **ORDER RE: MOTION TO DISMISS** |
| REYA LLC, et al., | ) | |
|             Defendants. | ) | |

Having reviewed and considered all the briefing filed with respect to defendant Reya LLC's Motion to Dismiss Plaintiff's First Amended Complaint, (see Dkt. 28, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and orders as follows.

## BACKGROUND

Spy Dialer, Inc. ("plaintiff") owns and operates a website, "Spydialer.com." (See Dkt. 26, First Amended Complaint ("FAC") at ¶ 51). Spydialer.com lets users perform reverse searches of telephone numbers. (See id. at ¶ 54). Users can enter a telephone number into the website's search bar, and the website will attempt to identify who the number belongs to and where, geographically, that person is located. (See id. at ¶ 4).

Defendant Reya LLC ("defendant") operates the website "whoeasy.com," which provides a similar reverse phone search function as plaintiff's website. (See Dkt. 26, FAC at ¶¶ 15-16 & 45). Defendant also operates "Spydialer.org." (See id. at ¶ 281).

Plaintiff does not charge users a fee to perform searches on its website. (See Dkt. 26, FAC at ¶ 4). Instead, plaintiff earns money by placing banner advertisements on the site. (See id. at ¶ 58). Advertisers purchase space on Spydialer.com through certain advertising platforms, such as Google Ad Services and Adnimation. (See id. at ¶ 60). These advertising platforms serve as intermediaries between the advertisers and plaintiff. (See id. at ¶ 61).

This case arises from defendant's placement of certain advertisements on plaintiff's website, which began to appear on plaintiff's website beginning around May 3, 2017. (See Dkt. 26, FAC at ¶ 117). Plaintiff alleges that defendant's advertisements employed sophisticated, malicious computer code. (See id. at ¶ 76). When a user accessed Spydialer.com, this malicious computer code would cause the user's browser to automatically scroll down to the bottom of the webpage, where defendant's advertisement was located. (See id. at ¶ 90). The user's cursor would then be placed in a search box located within the advertisement, instead of in the search box for the Spy Dialer website. (See id. at ¶ 93). The advertisement's search box was designed to look similar to the search box plaintiff's website employed. (See id. at ¶ 92). At the same time, defendant's malicious code prevented users from scrolling back up the page to plaintiff's search box. (See id. at ¶ 94). Users who typed a phone number into the advertisement's search box were redirected to defendant's website. (See id. at ¶ 104).

In August 2017, plaintiff became aware of defendant's advertisements and discovered that the advertisements made it "extraordinarily difficult, if not entirely impossible" for users to utilize plaintiff's website as intended. (See Dkt. 26, FAC at ¶¶ 119-20). Plaintiff's CEO reached out to defendant, and Jeff Smith, a manager at defendant, claimed that the malicious code was the result of a "coding error." (See id. at ¶¶ 8, 124).

On August 28, 2017, plaintiff filed a complaint with Google Adsense, the "publisher side of Google Ad Services," which was the intermediary that had placed defendant's advertisements on plaintiff's website. (See Dkt. 26, FAC at ¶¶ 129, 134). Google Adservices conducted an investigation, concluded that defendant's advertisements "constituted a fraudulent business practice," and banned the advertisements from further use. (See id. at ¶¶ 135-37).

Plaintiff alleges that defendant's advertisements caused its website to lose "ranking in Google's search engine results[.]" (See Dkt. 26, FAC at ¶¶ 155, 157). Plaintiff also claims that the advertisements led to a loss of traffic, (see id. at ¶ 185), which resulted in lower advertisement revenue for plaintiff. (See id. at ¶ 187). Plaintiff lost additional revenue after having to cancel an affiliate advertising agreement with Truthfinder.com. (See id. at ¶¶ 140-53). Plaintiff further alleges that it suffered losses from the amount of time its CEO had to spend responding to the advertisements. (See id. at ¶¶ 222-306). Finally, plaintiff alleges it has suffered reputational damage. (See id. at ¶ 111).

On May 31, 2018, plaintiff filed the instant action, asserting ten causes of action, for: (1) violation the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq.; (2) violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, et seq.; (3) false designation of origin and false advertising, 15 U.S.C. §§ 1125, et seq.; (4) violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (5) violation of California Penal Code § 502; (6) trademark infringement; (7) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (8) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (9) common law conversion; and (10) common law fraud. (See id. at ¶¶ 288-424). On August 6, 2018, plaintiff filed the operative FAC, which asserts the same ten causes of action as well as an additional negligence claim. (See Dkt. 26, FAC at ¶¶ 308-491).

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 550 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 267, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

Moreover, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that those allegations be pled with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citations and quotation marks

omitted). The complaint must set out the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997) (superseded by statute on other grounds)). "'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" Id. (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by statute on other grounds)).

## DISCUSSION

I.   COMPUTER FRAUD AND ABUSE ACT CLAIM.

The Computer Fraud and Abuse Act ("CFAA") creates a private right of action against any individual who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer[,]" where, inter alia, the harmed party suffers a loss of at least $5,000 in a one-year period. 18 U.S.C. §§ 1030(a)(2)-(a)(4). A "protected computer" is "a computer . . . which is used in or affecting interstate or foreign commerce or communication[.]" Id. at § 1030(e)(2)(B); see United States v. Nosal, 676 F.3d 854, 859 (9th Cir. 2012) (protected computers are "effectively all computers with Internet access").

"The CFAA was enacted in 1984 to enhance the government's ability to prosecute computer crimes." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1130 (9th Cir. 2009). "The act was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to access and control high technology processes vital to our everyday lives." Id. (quotation marks omitted).

Defendant argues that plaintiff fails to allege that defendant ever accessed any of plaintiff's computers. (See Dkt. 28, Motion at 6). Plaintiff acknowledges that defendant had limited authorization to access defendant's computers, because defendant submitted advertisements to advertising platforms (i.e., Google Ad Services) which would then place the advertisements on

plaintiff's website. (See Dkt. 29, Plaintiff Spy Dialer's Opposition to Defendant Reya's Motion to Dismiss ("Opp.") at 7). However, plaintiff alleges that defendant exceeded the scope of this authorization by causing the advertisements with malicious code to be placed on plaintiff's site. (See id.).

The CFAA defines the term "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Here, the FAC fails to plead that defendant obtained or altered information on plaintiff's computers that defendant was not authorized to obtain or alter. (See, generally, Dkt. 26, FAC). For example, plaintiff does not allege that defendant continued to place advertisements on plaintiff's website even after permission to do so had been revoked. (See, generally, id.). Had that been the case, defendant might well be liable under the CFAA.[1] As it stands, however, merely submitting advertisements through Google Ad Services, (see Dkt. 26, FAC at ¶ 131), does not state a CFAA violation.

II.  ELECTRONIC COMMUNICATIONS PRIVACY ACT.

The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, provides a private right of action against "any person who . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]" 18 U.S.C. § 2511(1)(a); DISH Network L.L.C. v. Fineman, 2017 WL 2060010, *1 (C.D. Cal. 2017) ("A majority of courts have also determined that Section 2511 creates a private right of action.").

Defendant claims that the FAC fails to plausibly plead an ECPA violation because it never alleges that defendant "intentionally intercepted any communications intended for [plaintiff]." (Dkt. 28, Motion at 7). The court is unpersuaded.

---

[1] That defendant submitted the malicious advertisements through a third party rather than directly access plaintiff's computers likely would not have saved defendant from liability in such an instance. See Facebook, Inc. v. Power Ventures, Inc., 844 F.3d 1058, 1067 (9th Cir. 2016), cert. denied, 138 S.Ct. 313 (2017) ("Once permission has been revoked, technological gamesmanship or the enlisting of a third party to aid in access will not excuse liability.").

The ECPA defines the term "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "The term 'acquisition' is not defined in § 2510; however, its ordinary meaning–the act of acquiring, or coming into possession of–is certainly broad enough to encompass [defendant's] conduct." United States v. Gore, 155 F.3d 1051, 1055 n. 7 (9th Cir. 1998), cert. denied 525 U.S. 1071 (1999) (citation omitted). "Such acquisition occurs when the contents of a wire communication are captured or redirected in any way." Noel v. Hall, 568 F.3d 743, 749 (9th Cir. 2009) (internal quotation marks omitted).

In the present case, when a visitor attempted to use plaintiff's website, defendant's malicious advertisement would force the visitor's browser to automatically scroll to the bottom of the webpage, and cause the visitor's cursor to appear in a search box designed to look the same as the search box on plaintiff's website. (See Dkt. 26, FAC at ¶¶ 90-92). Even if the visitor realized what was happening, defendant's malicious code prevented the visitor from scrolling back up to the top of the webpage to use plaintiff's own search box. (See id. at ¶ 94). In this way, defendant "captured" and "redirected" traffic intended for plaintiff's website and forcibly rerouted it to defendant's own service. See Noel, 568 F.3d at 749.

Defendant's contention that its interception of plaintiff's web traffic was not intentional, (see Dkt. 28, Motion at 7), is belied by the FAC. Plaintiff alleges that the malicious code underlying defendant's advertisements was sufficiently "sophisticated" that it could not have come about through mistake or error. (See Dkt. 26, FAC at ¶¶ 80, 82). Instead, the code could only have been created by someone with knowledge of the relevant coding languages. (See id. at ¶ 81). Given the sophistication of the code underlying defendant's advertisements and the fact that most coding errors result in a computer application being rendered inoperative, (see id. at ¶ 82), the court concludes that the FAC adequately alleges that defendant's acquisition of the web traffic was intentional.

Defendant's reliance on Cloudpath Networks, Inc. v. SecureW2 B.V., 157 F.Supp.3d 961 (D. Colo. 2016) is unavailing. In Cloudpath, the defendant was a sales agent for plaintiff, and in that capacity, encouraged customers to purchase a competitor's product instead of the plaintiff's.

157 F.Supp.3d at 985. The plaintiff alleged that this violated the ECPA, but the court disagreed, on grounds that the plaintiff "was the intended recipient of the[] communications," and that the "interception" of the communications was not "contemporaneous with transmission." Id. at 986; see also Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 878 (9th Cir. 2002), cert. denied, 537 U.S. 1193 (2003) ("Congress, therefore, accepted and implicitly approved the judicial definition of 'intercept' as acquisition contemporaneous with transmission.").

The problems identified with the plaintiff's claim in Cloudpath are not present here. There is no indication that the intended recipient of web traffic to Spydialer.com is actually defendant's webpage. Additionally, the interception of this web traffic occurs simultaneously with when visitors attempt to access plaintiff's website. In short, plaintiff's second cause of action states a legally viable claim.

III. LANHAM ACT.

Plaintiff's third cause of action is that defendant violated the Lanham Act, 15 U.S.C. § 1125. The Lanham Act provides that "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person" may be held civilly liable by the damaged party. 15 U.S.C. § 1125(a)(1)(A).

Defendant asserts that plaintiff's Lanham Act claim fails because "there is no allegation that the advertisement used [plaintiff's] trademark or made any false or misleading statements as required under the Lanham Act." (Dkt. 28, Motion at 10). However, this argument ultimately fails, because plaintiff also alleges a Lanham Act violation for defendant's registration of the "Spydialer.org" website.

"To establish a trademark infringement claim under section 32 of the Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act, [plaintiff] must establish that

[defendant] is using a mark confusingly similar to a valid, protectable trademark of [plaintiff's]." Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999).[2] Here, plaintiff alleges that it is the owner of the "SPY DIALER" mark. (See Dkt. 26, FAC at ¶ 395).

The eight factors a court considers to determine if two marks are confusingly similar are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. Multi Time Machine, Inc. v. Amazon.com, Inc., 804 F.3d 930, 935 n. 1 (9th Cir. 2015), cert. denied 136 S.Ct. 1231 (2016). "In the Internet context, courts must be flexible in applying the factors as some may not apply." Playboy Enters., Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1026 (9th Cir. 2004).

It is readily apparent that plaintiff's "Spydialer.com" website is confusingly similar to defendant's "Spydialer.org" site, as there is no difference between the names other than the top level domain extension. Moreover, plaintiff and defendant offer identical services. (See Dkt. 29, Opp. at 17); Finance Exp. LLC v. Nowcom Corp., 564 F.Supp.2d 1160, 1175 (C.D. Cal. 2008) ("In light of the striking similarity of the marks, if they were used with identical products or services, likelihood of confusion would follow as a matter of course.").

Defendant – properly – doesn't attempt to argue that "Spydialer.org" is not confusingly similar to "Spydialer.com." (See Dkt. 30, Reply to Opp. ("Reply") at 4-5). Instead, it claims that no confusingly similar mark was utilized in its advertisement. (See id. at 5). Even assuming defendant's claim is accurate, plaintiff's Lanham Act claim is based defendant's operation of the "Spydialer.org" website, which is sufficient to state a claim for relief.[3] (See Dkt. 26, FAC at ¶ 391).

---

[2] "Both registered and unregistered trade names and trademarks are protected under the Lanham Act." SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd., 846 F.Supp.2d 1063, 1074 (N.D. Cal. 2012).

[3] Plaintiff's sixth cause of action under California common law for trademark infringement is interchangeable with the two-part Lanham Act test for trademark infringement. See Miramar Brands Grp., Inc. v. Fonoimoana, 2017 WL 2903256, *4 (C.D. Cal. 2017). Accordingly, for the same reason that plaintiff's Lanham Act claim is viable, so, too, is this claim.

IV. ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT.

The Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), provides that "[a] person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person . . . has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and . . . registers, traffics in, or uses a domain name that . . . in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark[.]"  15 U.S.C. § 1125(d)(1)(A)(i)-(ii).

Plaintiff alleges that defendant violated the ACPA when an "unknown registrant," whom plaintiff believes to be associated with defendant, registered the "Spydialer.org" domain name. (See Dkt. 26, FAC at ¶ 397).  According to plaintiff, this unknown registrant was defendant Reya LLC or a John Doe associated with Reya LLC.  (See id. at ¶¶ 411-17).

Defendant argues that plaintiff's ACPA claim should be dismissed because under the ACPA, "[a] person shall be held liable for using a domain name under [the ACPA] only if that person is the domain name registrant or that registrant's authorized licensee."  15 U.S.C. 1125(d)(1)(D); (Dkt. 28, Motion at 11).  Here, however, the FAC pleads ample facts which give rise to an inference that Reya LLC was in fact the registrant of Spydialer.org.  See Colt Int'l Clothing Inc. v. Quasar Sci., LLC, 304 F.Supp.3d 891, 892 (C.D. Cal. 2018) (at motion to dismiss stage, the court "must make all reasonable inferences in the plaintiff's favor") (citing Nordstrom v. Ryan, 762 F.3d 903, 906 (9th Cir. 2014)).  For example, plaintiff alleges that Spydialer.org's terms of usage are materially identical to those on defendant's "whoeasy.com" website. (See Dkt. 26, FAC at ¶¶ 411, 413).  Moreover, Spydialer.org's terms of usage explicitly identify Reya LLC as the owner and controller of the Spydialer.org website.  (See id. at ¶ 413).  In short, the FAC pleads facts which lead to the plausible inference that defendant registered the Spydialer.org domain name.

V. CALIFORNIA PENAL CODE § 502.

As relevant here, California Penal Code § 502 creates liability against an individual who "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise

uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data." Cal. Penal Code § 502(c)(1); see also id. at § 502(e)(1) (creating a private right of action).

Defendant argues that this claim should be dismissed because plaintiff fails to allege that defendant accessed any of plaintiff's computers, computer systems, data or computer networks. (See Dkt. 28, Motion at 12-13). Just as plaintiff's CFAA claim fails because plaintiff does not allege that defendant accessed plaintiff's computers without authorization, see supra at § I., so too must those aspects of plaintiff's § 502 claim which depend on defendant having accessed plaintiff's computers. See Cline v. Reetz-Laiolo, 329 F.Supp.3d 1000, 1052 (N.D. Cal. 2018) ("[Th]e necessary elements of Section 502 do not differ materially from the necessary elements of the CFAA for purposes of this action.") (internal quotation marks omitted).

However, plaintiff also brings a claim under subsection 502(c)(3), which prohibits individuals from "[k]nowingly and without permission us[ing] or caus[ing] to be used computer services." Cal. Penal Code § 502(c)(3). Plaintiff alleges that defendant violated subsection c(5), which creates liability against a person who "[k]nowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network." Id. at § 502(c)(5). Plaintiff also alleges a violation of subsection c(8), for "[k]nowingly introduc[ing] any computer contaminant into any computer, computer system, or computer network." Id. at § 502(c)(8).

None of these subsections requires defendant to have accessed any of plaintiff's computers. Defendant's only argument for dismissal is that plaintiff fails to allege "knowing" conduct on defendant's part. (See Dkt. 28, Motion at 12-13). But as the court has already found, the FAC adequately pleads that defendant's conduct was intentional. See supra at § II.; United States v. Bell, 575 F.Appx. 598, 606 (6th Cir. 2014) (intentional conduct is knowing conduct), abrogated on other grounds by Bell v. United States, 135 S.Ct. 2934 (2015). Therefore, plaintiff's fifth cause of action survives dismissal with respect to defendant's alleged violation of subsections

(c)(3), (c)(5) and (c)(8) of California Penal Code § 502, but not as to the alleged violation of subsections (c)(1) and (c)(2).

VI. FALSE ADVERTISING.

California Business & Professions Code § 17500 makes it unlawful for any person to "induce the public to enter into any obligation" by making "any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Plaintiff alleges that defendant's banner advertisement and domain name "Spydialer.org" violated this statute. (See Dkt. 26, FAC at ¶ 463). Defendant argues that this claim fails because the FAC does not state that defendant's banner advertisement or Spydialer.org constitutes an untrue or misleading "statement." (Dkt. 28, Motion at 13-14).

Plaintiff fails to identify any statement defendant made in connection with the advertisement or the domain name. (See, generally, Dkt. 26, FAC; Dkt. 29, Opp.). Thus, plaintiff has failed to state a viable false advertising claim. See Sensible Foods, LLC v. World Gourmet, Inc., 2012 WL 566304, *7 (N.D. Cal. 2012) (rejecting false advertising claim after concluding that a heart symbol "is not a statement"); Parent v. MillerCoors LLC, 2015 WL 6455752, *7 (S.D. Cal. 2015) ("MillerCoors' use of the BMBC trade name on the label is not a 'statement[.]'").

VII. UNFAIR COMPETITION.

Under California law, unfair competition is defined to "include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. In analyzing a claim under § 17200, the "ultimate test for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988) (internal quotation marks omitted).

Here, the court has already concluded that a likelihood of confusion exists between plaintiff's Spydialer mark and defendant's Spydialer.org. See supra at § III. Therefore, plaintiff's § 17200 cause of action survives dismissal.

VIII. CONVERSION.

Plaintiff alleges that defendant unlawfully converted web traffic intended for plaintiff's website. (See Dkt. 26, Complaint at ¶ 475). "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Welco Elecs., Inc. v. Mora, 223 Cal.App.4th 202, 208 (2014) (internal quotation marks omitted). Under California law, "domain names are intangible personal property subject to a common law action for conversion[.]" CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1143 (9th Cir. 2010).

In concluding that domain names embody a property interest, the Ninth Circuit applied a three-part test: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." Kremen v. Cohen, 337 F.3d 1024, 1030 (9th Cir. 2003) (internal quotation marks omitted).

Applying this test to the case at hand, the court finds that plaintiff has failed to state a viable conversion claim for defendant's alleged theft of web traffic. To be sure, web traffic, like domain names, is "an interest capable of precise definition," in that web traffic consists of the number of Internet users who accessed a particular website within a given time frame. (See Dkt. 26, FAC at ¶¶ 184-221) (quantifying and setting forth, inter alia, the lost web traffic plaintiff has suffered as a result of defendant's actions). However, web traffic is not something in which a property right may exist because it fails to meet the second prong of the Kremen test, in that it is not "capable of exclusive possession or control." 337 F.3d at 1030. Unlike domain names, which are capable of exclusive possession or control by virtue of their registration, see id., web traffic is distinctively ephemeral. Indeed, even the parties that posted non-malicious banner advertisements on Spydialer.com were no doubt hoping to redirect a portion of plaintiff's web traffic from plaintiff's

website to theirs. Additionally, plaintiff has cited to no case holding that a property interest capable of conversion exists in web traffic, and the court is aware of none.[4]

The court is cognizant of the difficulties attending to the application of traditional tort theories to new technology. Nonetheless, guided by the three-part Kremen test, the court is unable to conclude that plaintiff may assert a property interest in web traffic. Plaintiff's ninth cause of action, for common law conversion, therefore fails.

IX.   FRAUD.

Plaintiff's tenth cause of action is for common law fraud. (See Dkt. 26, FAC at ¶¶ 477-81). "The elements of common law fraud in California are (1) a misrepresentation of a material fact (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Collins v. eMachines, Inc., 202 Cal.App.4th 249, 259 (2011).

Here, plaintiff alleges that defendant committed fraud by "misrepresent[ing] their relationship with Spy Dialer by way of the infringing domain name and the malicious advertisements," thereby defrauding both plaintiff and "California consumers." (Dkt. 26, FAC at ¶ 479). Defendant argues that plaintiff fails to plead a specific misrepresentation on its part. (See Dkt. 28, Motion at 16-17).

Plaintiff correctly notes that the malicious banner advertisement, which was deliberately designed to look like plaintiff's own search function, was likely to deceive consumers to plaintiff's own detriment. (See Dkt. 29, Opp. at 23; Dkt. 26, FAC at ¶¶ 76-98). Plaintiff nonetheless fails to show how it reasonably relied on any misrepresentation made by defendant, and suffered

---

[4] Plaintiff cites to the dissenting opinion from an earlier iteration of Kremen, in which Judge Kozinski opined that the plaintiff's "intangible property is (among other things) the right to have people who type [the domain name for plaintiff's website] into their web browsers [be] sent to *his* website." Kremen v. Cohen, 325 F.3d 1035, 1048 (9th Cir. 2003) (Kozinski, J., dissenting) (emphasis in original). However, apart from the fact that dissenting opinions are not binding on this court, see United States v. Ameline, 409 F.3d 1073, 1083 n. 5 (9th Cir. 2005), the dissent on which plaintiff relies preceded the iteration of Kremen in which the Ninth Circuit set forth the three-part test to be used to determine if intangible property is susceptible to conversion. See Kremen, 337 F.3d at 1030.

damages as a result. See Boschma v. Home Loan Ctr., Inc., 198 Cal.App.4th 230, 252 (2011) ("A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages.") (internal quotation marks omitted) (emphasis added) (alteration in original); Hypertouch, Inc. v. ValueClick, Inc., 192 Cal.App.4th 805, 820 (2011) (same). Therefore, because plaintiff does not show how it (as opposed to other people) reasonably relied on any misrepresentation defendant made, this cause of action is legally deficient.

X.   NEGLIGENCE.

This cause of action is predicated on Jeff Smith's (a manager at defendant) attribution of the malicious code in defendant's advertisement to a "coding error." (See id. at ¶ 490). "The elements of any negligence cause of action are duty, breach of duty, proximate cause and damages." Peredia v. HR Mobile Servs., Inc., 25 Cal.App.5th 680, 687 (2018).

Defendant argues that plaintiff's negligence claim fails because defendant's contracts with advertising platforms, which led to the malicious advertisements being placed on plaintiff's website, cannot give rise to negligence liability. (See Dkt. 28, Motion at 17-19). Defendant relies on Southern California Gas Leaks Cases, 18 Cal.App.5th 581 (2017), where the California court of appeal held that "[g]enerally, a defendant owes no duty to prevent purely economic loss to third parties under any negligence theory." Id. at 587. The court continued by noting that "'[t]he determination whether in a specific case the defendant will be held liable to a third person not in privity [of contract]" depends upon six factors: '[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.'" Id. (quoting Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc., 1 Cal.5th 994, 1013-14 (2016); Biakanja v. Irving, 49 Cal.2d 647, 650 (1958)).

Applying this six-factor test here, the court finds that it favors sustaining plaintiff's negligence claim. Specifically, the transactions between defendant and the advertising platforms

were intended to affect plaintiff, in that the transactions were for the placement of defendant's advertisement on plaintiff's website. (See Dkt. 26, FAC at ¶¶ 60-61). The harm that plaintiff suffered was foreseeable, since the malicious code underlying the advertisement was specifically designed to deceptively and coercively redirect traffic from plaintiff's website to defendant's. (See id. at ¶¶ 76-80, 90, 94).

The third factor presents a closer call, because as defendant points out, (see Dkt. 30, Reply at 9), it is possible that the loss of web traffic plaintiff suffered as a purported result of the malicious advertisement was due to other factors. The fourth factor is likewise indeterminate for the same reason.

As to moral blame, negligence is not inherently morally blameworthy, though negligent conduct that involves fraud, illegality, or an intent to cause disadvantage to another party can be blameworthy. See Alereza v. Chicago Title Co., 6 Cal.App.5th 551, 561 (2016). Here, plaintiff alleges that defendant's conduct was fraudulent, (see Dkt. 26, FAC at ¶ 216), the court has determined that plaintiff makes out a viable cause of action under the ECPA and Cal. Penal Code § 502, two primarily criminal statutes, see supra at §§ II & V, and defendant's conduct is alleged to have been intended to harm plaintiff, defendant's competitor. (See Dkt. 26, FAC at ¶¶ 111-16, 458). The fifth factor therefore favors sustaining plaintiff's negligence claim.

The final factor, the policy of preventing future harm, also cuts in plaintiff's favor since if plaintiff is left unable to collect from defendant for the damage caused by the malicious code, defendant and others similarly situated would be at liberty to undertake similar, harmful conduct in the future. See Moore v. Anderson Zeigler Disharoon Gallagher & Gray, 109 Cal.App.4th 1287, 1296 (2003) (policy of preventing future harm is implicated where, without liability, no one apart from plaintiff would be positioned to hold the negligent party accountable for wrongdoing).

XI. LEAVE TO AMEND.

Rule 15 of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); see Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (The policy favoring amendment must "be applied with extreme liberality."). However, "[i]t is settled that the grant of leave to amend

the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802 (1971). This discretion is guided by an examination of several factors, including whether: (1) the amendment causes the opposing party undue prejudice; (2) the amendment is sought in bad faith; (3) the amendment causes undue delay; (4) the amendment constitutes an exercise in futility; and (5) the plaintiff has previously amended his or her complaint. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 n. 3 (9th Cir. 1987).

Having liberally construed and assumed the truth of the allegations in the FAC, the court will grant leave to amend with respect to plaintiff's CFAA claim, in order to permit plaintiff to plead facts that defendant continued to place advertisements on plaintiff's website after permission to do so had been revoked. If defendant did not engage in this misconduct, the court expects that plaintiff will not be able to salvage its CFAA claim. For the same reason, the court will grant leave to amend with respect to plaintiff's California Penal Code §§ 502(c)(1) and (c)(2) claims. The court cautions plaintiff that if it does not have a good faith basis for alleging that defendant placed advertisements on plaintiff's website after permission was rescinded, plaintiff should not include the claim in the next amended complaint. See Wall v. HSBC Bank, USA, 2012 WL 1289755, *8 (C.D. Cal. 2012) ("Therefore, the Court dismisses this cause of action with leave to amend only to the extent that Plaintiff has a good faith basis for pleading specific facts regarding all of the foregoing defects."). Finally, the court is persuaded that leave to amend would be futile with respect to plaintiff's false advertising, conversion and fraud claims. See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). These claims are legally deficient, and it is very unlikely that amendment would save them.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint **(Document No. 28)** is **granted in part and denied in part**. The First and Fifth causes of action of the First Amended Complaint (Document No. 26) are **dismissed with leave to amend**. The Seventh, Ninth, and

Tenth causes of action of the First Amended Complaint (Document No. 26) are **dismissed without leave to amend**. The Motion is denied in all other respects.

2. If plaintiff wishes to file a Second Amended Complaint, it shall do so no later than **March 29, 2019**.

3. Defendant shall file an Answer to the Second Amended Complaint or a motion pursuant to Rule 12 no later than **April 12, 2019.** However, any Rule 12 motion may be directed only as to the claims that are being dismissed with leave to amend.

4. In the event defendant wishes to file another motion to dismiss, then counsel for the parties shall, on **April 5, 2019, at 10:00 a.m.**[5] meet and confer in person at an agreed upon location within the Central District of California to discuss defendant's motion to dismiss. Defendant's motion to dismiss must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion). Failure to include such a declaration will result in the motion to dismiss being denied.

Dated this 18th day of March, 2019.

                                                /s/
                                       Fernando M. Olguin
                                    United States District Judge

---

[5] Counsel may agree to meet and confer at another time and place without seeking court approval for such an agreement.